## Miller's Appeal.

31　337|
128　280|
31　337|
176　367|
31　　337|
25 SC ²405|

A father conveyed a farm to his son, under an agreement wherein it was stipulated, that $1500 of the purchase-money should be paid in cash, "and the remainder to be divided in three equal shares, the one share shall be the said J. M." (the grantee), "*his hereditary portion from his father,* the said V. M." (the grantor), "and the other two shares shall be divided into eight equal yearly payments:" *Held,* that this was an advancement to the extent of one-third of the balance of the purchase-money, after payment of the $1500, and did not estop the son from claiming an equal portion of his father's estate, after deducting the advancement.

An advancement is a pure and irrevocable gift, by a parent, in his lifetime, to his child, on account of such child's share of the estate, after the parent's decease; it is not chargeable with interest; and the time when it is to be considered and settled is, after the death of the ancestor, regardless of the time when made.

Appeal from the Orphans' Court of *Lebanon county.*

This was an appeal by Jonathan Miller, from the decree of the court below, distributing the balance in his hands as administrator of the estate of his father, Valentine Miller, deceased.

On the 19th January 1836, Valentine Miller, the intestate, contracted, by articles of agreement, to sell to his son Jonathan, the appellant, his farm in Lebanon county, at $60 per acre, payable in the following manner, to wit, $1500 part thereof, on the delivery

Vol. VII.—22

of the deed, "and the remainder to be divided in three equal shares; *the one share shall be the said Jonathan Miller, his hereditary portion from his father, the said Valentine Miller*, and the other two shares shall be divided in eight equal yearly payments; the first is to be paid on the first day of April, A.D. 1837, and so on every first day of April, until the whole eight payments are in full paid."

This agreement also contained the following provision: "And further, is agreed that the said Jonathan Miller has to give yearly, and every year, twelve bushels of good wheat, and Indian corn as much as to fatten two hogs, without pay, to the said Valentine Miller, and to his wife, during their natural life, and to have a right to stay and dwell in the house where he now occupies until he can get another house, or can build a new house, &c.; and have a right to quarry stones on said land for his buildings, as much as he wants."

A deed of the farm was made in pursuance of this agreement; Jonathan paid $1400 on account of the purchase-money, the whole of which amounted to $4398.75; and gave his bonds for the balance, less $966.25, his share under the agreement.

Valentine Miller survived until 1856, and died at the advanced age of ninety-four years, leaving the appellant and two other children, his heirs at law. Letters of administration were granted to the appellant; and, on a settlement of his accounts, the auditor appointed to make distribution among the heirs, brought all the advancements into hotch-pot, and reported a sum of $199.75 as due to the appellant.

The court below, on exceptions filed, set aside the report of the auditor; and decreed the balance of the estate to be divided among the other heirs, to the exclusion of the appellant; being of opinion that the $966.25, advanced to him in 1836, was received in full of his share of the estate. From this decree the present appeal was taken.

*Killinger*, for the appellant, cited Act 8th April 1833, § 16; 1 *Bouv. Law Dict.* 76, 584; 2 *Id.* 350; Lentz *v.* Hertzog, 4 *Wh.* 523; Oyster *v.* Oyster, 1 *S. & R.* 421.

*Ulrich* and *Boughter*, for the appellees, cited Lentz *v.* Hertzog, 4 *Wh.* 523, 525.

The opinion of the court was delivered by

THOMPSON, J.—Equality is equity amongst heirs, and the doctrine of advancement has, for its object, the furtherance of this end. It is defined to be "a pure and irrevocable gift, by a parent, in his lifetime, to his child, on account of such child's share of the estate, after the parent's decease:" *Brightly's Eq.*, § 389; Yundt's

[Miller's Appeal.]

Appeal, 1 *Harris* 575. The time when the advancement is to be considered and settled is, after the death of the ancestor, regardless of when made, and is to be treated as "purely a gift;" so that all considerations, as to time and interest, in the absence of express direction and assent of the heir, is out of the question. It would subvert the very end of the parent's intention, which the doctrine is supposed to effectuate, if compensation, as a result of law, were required in the shape of interest for advancement. The parent makes it generally as his children come of age or marry, and the disposition so made will not be interfered with, on any surmised contrary intent, to that of a free gift. The Act of Assembly of the 8th April 1833, fully adopts these pre-existing equity principles, on the subject, by declaring that, when a child has been advanced by his parent, either in real or personal estate, to the extent of an equal share, he shall have no further portion in the distribution. But if he shall have received less, then he shall be entitled to such sum as will make him equal with the other heirs.

The auditor in this case followed these principles, and distributed the residuum of the estate, after deducting advancements. This decision being excepted to, the learned president of the Orphans' Court overruled it, and directed the appellant's portion to be distributed to the other heirs. This is the ground of exception here.

The learned judge controverted none of the principles suggested, but denied to them their legal operation, under the idea, that the agreement between Valentine Miller and his son Jonathan controlled the distribution. By the agreement, the father sold to his son his farm for $4398.75; of which $1500 were paid down, and bonds given for the residue, under the following stipulation: "and the remainder to be divided into three equal shares, the one share shall be Jonathan Miller's, his hereditary portion from his father, Valentine Miller, the other two shares shall be divided into eight equal yearly payments," &c., to be paid in equal proportions to a son and daughter, his remaining children. The intestate lived with the appellant nearly twenty years thereafter, and after his death, his estate amounted to a few hundred dollars more than the two-thirds value of the farm, at the time of the sale. It was this increase that gave rise to the present controversy.

The agreement very clearly manifests an intention on the part of the intestate, to divide his estate equally among his three children; for, by it, he made them equal to a cent, as regarded his real property, which constituted almost, if not entirely, his whole estate at that time, differing only as to the period of enjoyment; a difference not thought an objectionable inequality in wills, or so regarded in the intestate laws, or by the Act of the 8th April 1833, or by the law regulating advancements, all of which favor

equality amongst heirs.  Is there any covenant in the agreement to control this intent, thus evinced, and so accordant with law? We must look to the agreement for this; for it is still in force, and must remain so, until the purchase-money is all paid, as it regulates the distribution between two of the heirs.  The court were right in deciding this.  But we think they were in error, in the effect given to the agreement.  It provided simply for a disposition, amongst the intestate's children, of his real estate.  It was made to operate equally, by a division of the purchase-money amongst them.  Jonathan's share was allowed as a part payment, and he covenanted to. pay his brother and sister equal amounts for their shares, and he was to become the owner of the farm.  This distribution was obviously the object of the agreement, but it was regarded by the court below, as also having the effect of a release by Jonathan of all interest in the future, in his father's estate, let the amount be ever so large.  As he was to receive no more in the arrangement than the brother and sister, and still was to continue to maintain and provide for his father, it is difficult to perceive a good reason for such an inequitable construction of a provision so ambiguous; and no reason being obvious, it is a just ground to conclude that nothing of the kind was meant.  "The one share shall be Jonathan Miller's, his hereditary portion from his father."  These are the words out of which a covenant of release must be extracted, if any such exists.  But the words, and substance are both wanting to make it a release, operating on future interests.  The equality of distribution, then made, leaves no ground to presume that Jonathan was, on account of superior advancement, to receive no more, for this was not the case.  The words were undoubtedly introduced to show that Jonathan shared equally with the brother and sister, as they with him, and also to show how the purchase-money of the farm was to be paid.  I entirely agree, that to give an instrument the effect of a release of all future interest in an estate to which one is an heir, it should be clear and unambiguous.  The intention should be manifest. Presumptions are all in favour of equal distribution.  If Valentine Miller had died intestate the day after the receipt of the $1500 from Jonathan, as part payment of the land, the pretence would certainly have been considered an ungracious one, that would have attempted the exclusion of Jonathan from an equal share of it. Or if, before his decease, his estate had increased, after the distribution made, to six thousand instead of six hundred dollars, the judicial mind would have hesitated long before determining that the oldest son, and the favourite child, as I think the acts of the father show him to have been, should have no share of it, on account of the terms used in the instrument.  The principle is the same, although the amount is greatly less.  It was truly enough called an "hereditary portion"—it was so—but these terms pos-

[Miller's Appeal.]

sessed neither the force nor the form to cut off all future participation. There was neither a will of the father, nor a contract of the son, to this effect, and Jonathan's rights stand as do the other heirs, in regard to his father's estate.

Advancement is a pure gift, on account of the child's share of the estate of the parent, as already stated; and consequently is not chargeable with interest, unless, perhaps, when expressly given and received upon such terms. That was not the case here, but the learned judge determined the equity of the case by a consideration much akin to its allowance, for he says, Jonathan had the use of $966, for about twenty years, before his father's death, while his brother and sister were postponed until after his death. Against this, however, the fact that the father lived all the time with Jonathan, was considered; but this, again, was presumed to have been compensated, in the advantages in the bargain for the farm. These presumptions all contemplate compensation for advancements, and are therefore at war with the principle—it is a pure gift, and not to be interfered with, as such, by considerations not expressly existing at the time when made. This was a case of ordinary advancement, and we can only regard the rights of the parties, in the spirit of the law ordinarily regulating it. For these reasons, the decree of the Orphans' Court must be reversed.

> Decree reversed, and distribution decreed according to the auditor's report. The appellees to pay the costs in this court.