Estate of Henry Farnum, deceased. Appeal of Charles H. Krumbhaar and Mary Ellis, his Wife, and Leonard E. Opdycke and Edith, his Wife.

*Wills—Advancements—Interest thereon.*

Advancements do not of themselves bear interest. If interest is to be charged on them it can only be done by force of an intent of the testator to that effect, and that intent must be clearly expressed in the will. Such intent will not be imputed without express words when the result would be burdensome, unequal and extremely unjust.

*Will construed.*

A testator provided that the principal of all sums received from him by his daughter should be treated as advances on account of her interest in his estate, and be treated and considered as brought into hotch pot with, or added to, the capital or principal of his estate in the hands of trustees for the benefit of his other children and their issue, " so as to reduce the share of my said daughter or her issue in said rents and income of my estate so devised in trust by an amount equal to the interest at six per cent of said sum so advanced." Specific annuities for others were provided for, and it happened that the income was not sufficient to pay the other annuities and to pay to each of the children as much as the interest at six per cent on the advances made to the daughter. *Held*, that the contingency contemplated by the testator had not arrived, and that when the other children had received in cash income the amount of the advances to the daughter, the income thereafter received should be divided equally between them all until the time for final distribution of the principal arrived.

Argued April 6, 1896. Appeal, No. 224, Jan. T., 1896, by Chas. H. Krumbhaar et al., from decree of O. C. Phila. Co., No. 166, Oct. T., 1879, in the estate of Henry Farnum, dismissing exceptions to adjudication. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Reversed.

Adjudication of the second account of the Fidelity Insurance, Trust & Safe Deposit Company of Philadelphia, substituted trustees under the will of Henry Farnum, deceased.

The material portions of the will and the facts sufficiently appear in the opinion of the Supreme Court.

The first distribution referred to in the court below by PENROSE, J., is reported as Farnum's Est., 16 Phila. 215. The opinion of the court in banc in this appeal is reported as Farnum's Est., 4 Dist. Rep. 383.

*Errors assigned* were, dismissing exceptions and confirming adjudication of account.

*John G. Johnson,* with him *C. H. Krumbhaar,* for appellants.—Interest is never charged upon an advancement unless the testator has expressly so directed : Fickes v. Wireman, 2 Watts, 314; Miller's App., 31 Pa. 338; Porter's App., 94 Pa. 332 ; Oyster v. Oyster, 1 S. & R. 427; Phillips v. Gregg, 10 W. 158. Compensation for advancements has never been countenanced : Miller's App., 31 Pa. 341.

*Edward L. Perkins* and *George Sergeant,* for appellees.—This case was decided in Farnum's Est., 16 Phila. 215. Interest should be charged against Mrs. Bell's share after one year: Yundt's App., 13 Pa. 574; Patterson's App., 128 Pa. 269.

OPINION BY MR. JUSTICE GREEN, July 15, 1896 :

The question at issue in this case is confined within narrow limits. It is a perplexing question nevertheless, rendered so chiefly by the circumstance, that we find ourselves obliged to differ with the learned court below in two opinions delivered on the same question, at different times, by two of the very able and accomplished judges of that court. As we view the case it resolves itself into a mere question as to what was the intention of the testator as expressed in his will, in regard to the subject of interest on the advancement to his daughter Mrs. Bell. Two or three perfectly well established rules prevail in regard to the general subject. One is that advancements do not of themselves bear interest. Another is that if interest is to be charged on an advancement, it can only be done by force of an intent of the testator to that effect, and that intent must be clearly expressed in the will: Miller's Appeal, 31 Pa. 338; Porter's Appeal, 94 Pa. 332. It is apparent therefore, that the only subject of discussion is what is the expressed intention of Henry Farnum in relation to the matter in controversy.

It is beyond all question that Mrs. Bell was to be affected by a charge of interest on her advancement. An advancement was made to her by her father after the main will was executed, and it amounted in the aggregate to $6,250. The will was executed on August 9, 1851. By a codicil executed on November 1, 1852, he recited that after the making of the will his daughter

Mrs. Bell had received from him at various times large sums of money for purposes named, and that she and her husband might receive further sums.  He thereupon made the following provision in the codicil, to wit: "Now I do hereby direct and declare that the principal of all sums so received from me by her my said daughter since the execution of my said will or hereafter to be so received by her or her husband, shall be treated or considered as paid or advanced on account of her interest in my said estate under my said will, and shall be so regarded by my said trustees, and be treated and considered as brought into hotch pot with, or added to the capital or principal of my said estate in their hands, for the benefit of my other children and their issue or descendants, and so as to reduce the share of my said daughter Caroline or her issue or descendants in and of said rents, issues, profits, dividends, interest and income of my estate, so in and by my said will devised in trust for the benefit of my said children, or their issue or descendants by an amount equal to the interest at 6 per cent. of said sum so paid or advanced or to be paid or advanced to her my said daughter or her husband, by me."

It cannot be doubted, in our opinion, that this is not in any literal sense, a direction that the advancement made to the daughter by the testator in his lifetime shall bear interest.  If such had been the testator's intent it would have been properly expressed by a simple direction to that effect.  In point of fact it is a direction that the principal of the advancement should be added to the capital or principal of the testator's estate so as to reduce the share of the daughter in the income of the estate as it had been given by the will, by an amount equal to 6 per cent of the sum advanced to the daughter.  For the application of this direction we must recur to the will.  By the terms of that instrument two annuities were directed to be paid by the trustees of the estate, one of $500 to the testator's sister, and the other of $600 to the testator's widow, both during their lives respectively, and these annuities were to be paid out of the aggregate income of the estate.  The will also directed that the residue of the income of the estate, and the whole of the income after the deaths of the two annuitants, should be divided every year into equal parts among the testator's children who should be living at the time of the annual distributions, the children of

any deceased child taking their parent's share. There were but three children living at the testator's death, and one of them, Mrs. Bell, died a few years later leaving two children who are the present appellants.

The testator's sister died in 1881, but his widow did not die until October 31, 1894. The total advancements to Mrs. Bell amounted to $6,250. The payments of income to the children or their representatives were to continue until the last of the children was dead, and thereupon the principal of the estate was to be distributed to the persons who would be entitled thereto under the intestate laws of the commonwealth if the testator had lived until that time and had then died intestate.

It is very manifest that the testator supposed that his estate would yield enough income to pay the two annuities, and also to pay his several children an annual sum which would be greater to each than the annual interest at 6 per cent on the amount of his advancements to Mrs. Bell, because he made provision by the codicil, only for a reduction of the share of income which would be due to Mrs. Bell, by an amount which would be equal to the interest at 6 per cent of the total sum advanced. But there could be no such reduction unless Mrs. Bell's share of the total income would be more than the amount of such interest. It must be conceded that in making the computation of the total income to be divided the amount of the interest at 6 per cent on Mrs. Bell's advancements would have to be added to the income derived from other sources, and that the aggregate sum thus ascertained would have to be divided into three equal parts, of which Mrs. Bell would receive the one third of the aggregate less the amount of the interest at six per cent on her advancement. If the estate had yielded income enough to permit of such a distribution the method would have been perfectly simple, upon the ordinary principles of hotch pot distribution, and there would have been no occasion for any contest about it. But owing to unexpected causes the estate yielded for many years only a little more income than was necessary to pay the two annuities and there was but a trifling amount of income each year for distribution. When the sister of the testator died in 1881, the amount of her annuity was added to the general income for distribution increasing it by that sum. The testator died in 1855. After the

death of the sister, upon a settlement of the account of the trustee it was agreed in writing by the parties interested that the amount advanced to Mrs. Bell was $6,250, and that interest should be computed on this sum from December 15, 1858. On the adjustment of the account in the orphans' court it was found and adjudged in 1883 that during the whole of the twenty-four years that had thus elapsed from the death of the testator there was an accumulation of surplus income of $3,086.32, and that surplus was in 1880 divided between the testator's two children Mrs. Grubb and Henry Farnum. At the time of the adjudication in 1883 there was in the hands of the accountant a balance of income, after the payment of the widow's annuity, of about $1,700. Of this sum it was claimed by the heirs of Mrs. Bell that they were entitled to receive a share, but the orphans' court held that they were not so entitled until the other two children of the testator had received an amount of income equal to the aggregate of 6 per cent per annum upon the advancement of Mrs. Bell. It does not appear that any appeal was taken from this decision. At the present time, it is stated in the opinion of the orphans' court, the aggregate of income received by Mrs. Grubb and Henry Farnum in cash from the testator's death is $10,714.20, each share being $5,357.10. Neither Mrs. Bell nor her children have received a penny. Nevertheless the adjudication made by the orphans' court charges Mrs. Bell and her children with $13,500 because it was interest on $6,250, advancement, from December 15, 1858, to December 15, 1894, in all thirty-six years. Then, bringing this sum into hotch pot of income actually received, $10,714.20, and the sum charged as interest to Mrs. Bell $13,500, the whole is $24,214.20, and this being divided into three shares, each share is $8,071.40. So that according to this method, Mrs. Grubb and Mr. Farnum each get $8,071.40 as income of the estate, and Mrs. Bell instead of getting anything still owes them $5,428.60, or $2,714.30 to each. It follows if this is the correct mode of adjustment, that Mrs. Grubb and Mr. Farnum each take of income $10,537.10 and Mrs. Bell takes nothing. It must be constantly borne in mind that the advancement to Mrs. Bell was not a loan of money, nor was it a gift of interest bearing securities which would constantly produce income. On the contrary the advancement was made, as is recited in the

codicil, for the purpose of being spent at once to defray the cost of a voyage to Europe and assist in purchasing a house and furniture in New York. So that it was known to the testator that the advancement could not possibly produce any interest whatever at any time in the future.

The question now arises, was it the intention of the testator that Mrs. Bell was to pay absolute interest at 6 per cent on the whole amount of her advancement for all the years that might elapse from his own death until the death of all his children, or until the others would receive as much income as would equal the aggregate amount of 6 per cent interest on the advancement. Two of these children are still living and the length of time they may yet live is a matter of entire uncertainty. Nearly forty years have now passed and this interest charge is still running. Did the testator intend that such an enormous burden should be loaded upon his daughter? He knew that it might be many years before the last of his children would die, and he knew that the advancement could not possibly ever produce a dollar of interest because it had already been spent in such a manner that it could not produce interest. And he further knew that his daughter was never to get any part of the principal of his estate, either by hotch pot or in any other mode. The whole of the principal of the estate was expressly given by the will to the persons who would have inherited his estate under the intestate law if he had been alive when his last surviving child died, and had then died intestate. If the children of Mrs. Bell at that time have died without leaving any descendants, neither Mrs. Bell nor her children would ever get a single dollar of the principal of the estate. In order to equalize Mrs. Grubb and Henry Farnum with their sister Mrs. Bell it would only be necessary that they should each receive from the estate as much money as was advanced to her, to wit, $6,250. It seems to the writer, therefore, that when the amount of cash income received by them respectively reached $6,250, the income thereafter received should be divided equally between all three until the time of final distribution of the principal arrived.

It is manifest that the contingency contemplated by the testator did not arrive, because there never was an amount of income over and above the annuities, which would yield a sufficient sum to each of the children so that the share of Mrs. Bell

could be reduced by a sum equal to 6 per cent upon her advancement. The question therefore is what was his intent as to the distribution of the income in the state of facts as they actually existed. Of course if he had said his daughter should be charged every year with the full amount of interest at 6 per cent on her advancement, she would be bound by it. But he did not say so and from the language he did use in the codicil we are of opinion that he did not so mean. It seems to us it would be most oppressive, and therefore unjust, to hold that he intended to charge her with an amount several times larger than the whole sum of the advancements, when she had no income out of which to pay it. We would have to infer such an intention without express words to that effect, and without words from which such an intent could fairly be implied. As advancements do not bear any interest in and of themselves, we do not feel at liberty to impute such an intent without express words, when the result would be so burdensome, so very unequal, and hence so extremely unjust. Nor do we feel on the other hand that we can sustain the contention of the appellants that in the years when there was no income or a very trifling one, there should be no interest charge. Mrs. Grubb and Henry Farnum were not to have any of the principal any more than their sister, and there would be no way of equalizing them except through the income actually received. We therefore think they were entitled to have out of the cash income enough to give them as much as their sister received by way of advancement and when that result is attained, the income thenceforward received should be equally divided between the three, Mrs. Bell's children taking her share, and we so rule the case.

The decree of the court below is reversed, and the record is remitted with instructions to make distribution in accordance with this opinion, the costs of this appeal to be paid by appellees.