## Provident Life & Trust Co. v. Gratz et al., Appellants.

*Taxation — Insurance companies — Life insurance — Loans to policyholders—Collateral notes—Acts of June 17, 1913, and June 1, 1911.*

1. Where money is paid over by a life insurance company to policyholders, and the company receives in each case a promissory note of the policyholder, payable on demand, together with an assignment of the policy as collateral, but without any stipulation against personal liability on the part of the borrower, the transactions will be considered a loan, and taxable under the Act of June 17, 1913, P. L. 507.

2. In such case, the fact that the company's uniform practice is to deduct the loans, when not paid, from the policies, does not deprive it of the right to bring suit upon the note; nor is the opinion of the officers of the company that, as matter of law, the borrowers incurred no personal liability, important.

3. In such case, the Act of June 1, 1911, P. L. 581, 593, cl. 8, sec. 25, providing, under certain conditions, for advancement of money to policyholders on the sole security of the policies, does not apply.

Argued April 27, 1921. Appeal, No. 277, Jan. T., 1921, by defendants, from decree of C. P. No. 5, Phila. Co., March T., 1917, No. 5575, on bill in equity, in case of Provident Life & Trust Co. of Philadelphia v. Simon Gratz, John Wesley Durham and D. Newlin Fell, Members of the Board of Revision of Taxes for the City and County of Philadelphia, W. Freeland Kendrick, Receiver of Taxes for said City and County, and the City of Philadelphia. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ. Reversed.

Bill in equity for injunction. Before MONAGHAN, J.

The opinion of the Supreme Court states the facts.

The court awarded an injunction. Defendant appealed.

*Error assigned,* among others, was decree, quoting it.

*Mayne R. Longstreth,* with him *Ernest Lowengrund,* Assistant City Solicitor, and *David J. Smyth,* City Solicitor, for appellants.—When a life insurance company makes a so-called loan to a policyholder and takes an assignment of the policy as collateral security, the transaction may represent either a loan in the ordinary sense or a mere nontaxable advance or anticipatory payment on account of their liability under the policy. Which it is, depends upon the terms of the contract made when the money is obtained: Metropolitan L. Ins. Co. v. New Orleans, 205 U. S. 397; Liverpool, etc., Ins. Co. v. Orleans, 221 U. S. 347.

A very similar situation to that existing between an insurance company and borrowing policyholder, is that between a building and loan association and the borrowing stockholder: York T. Co. v. Gallatin, 186 Pa.

150; Stoddart v. Myers, 52 Pa. Superior Ct. 179; Erthal v. Glueck, 10 Pa. Superior Ct. 402; Com. v. B. & L., 10 D. R. 167; Bechtold v. Brehm, 26 Pa. 269; Reiser v. Savings Fund, 39 Pa. 137; Jarrett v. Cope, 68 Pa. 67; Kupfert v. B. & L., 30 Pa. 465.

Under the terms of the contracts made between plaintiff and its policyholders, they were loans properly so called. The promissory notes here assessed therefore represent money owing by solvent debtors and are taxable as such: Thorn's Case, 2 Pa. 331; Lishy v. O'Brien, 4 Watts 141; Elbert v. Moffly, 2 Pa. C. C. R. 71; Ritter v. Henning, 10 Pa. Superior Ct. 458; Reed v. Cassatt, 153 Pa. 156.

*C. E. Morgan, 3d,* with him *Abraham M. Beitler,* for appellee.—The advances were not loans: New York Life Ins. Co. v. Board of Assessors, 158 Fed. R. 462; Liverpool, etc., Ins. Co. v. Orleans Assessors, 221 U. S. 346.

OPINION BY MR. JUSTICE WALLING, July 1, 1921:

This bill was brought to restrain the collection of certain taxes. Plaintiff is a Pennsylvania corporation chartered and doing business as a life insurance and trust company. Its annual reports, to the State Insurance Department, show outstanding loans on life policies, approximating ten million ($10,000,000) dollars, upon which the defendants, as tax officers of the City and County of Philadelphia, levied an annual four-mill tax, under the Act of June 27, 1913, P. L. 507. The clause of the act relied upon in support thereof provides for such a tax upon "all moneys owing by solvent debtors, whether by promissory note or penal or single bill, bond or judgment"; and the real question is whether the so-called loans were such in fact or advancements to the holders of plaintiff's life insurance policies. The case was heard upon bill, answer, replication and testimony. The chancellor made exhaustive findings of facts and legal conclusions and entered a decree nisi for plaintiff,

and the court in banc, after dismissing exceptions, entered a final decree, restraining the collection of the tax in question; thereupon defendants brought this appeal.

Whether money delivered to a policyholder is a loan or an advancement on the policy depends upon the nature of the transaction; here, in our opinion, it is the former. This money was loaned or advanced to about eighteen thousand policyholders, and in each case the policyholder gave defendant a promissory note, payable upon demand, together with an assignment of the policy as collateral. The forms of the notes and agreements as to the collateral varied slightly, but were substantially as follows, viz:

"$......　　　　　　　　　Philadelphia

"On demand the undersigned jointly and severally promise to pay to the order of The Provident Life and Trust Company of Philadelphia, at its office in the City of Philadelphia,　　　　Dollars, with interest at the yearly rate of six per cent. from　　　　　　　payable half-yearly on the　　　　day of　　　and months in each year, without defalcation, for value received.

"Witnessed by.........................

"............................[Seal]

"............................[Seal]

"The cash value of Policy No.　　　dated Month　　　　issued by the Provident Life and Trust Company of Philadelphia (to be determined at the time of the termination of said Policy by the rules or practice of said company then in force), is hereby pledged by the undersigned as collateral security for the payment of the loan represented by the above obligation, and for any other indebtedness or liability of each maker of said obligation, to said company, now incurred or hereafter to be incurred while such collateral remains in its hands. And on default in payment of said loans on demand, or interest thereon when due, or on default in

payment of any premium on said policy when due, said company is hereby authorized to terminate said policy and apply as much of the cash value above referred to as may be necessary, to pay said loan and accrued interest and such other indebtedness or liability as may be due to the company. The remaining cash value of said policy as determined by the rules or practice of said company in force at the time of the termination of said policy, after payment of said loan and interest and any other indebtedness aforesaid, shall be paid, on proper receipt therefor, to the person or persons rightfully entitled thereto under the terms of said policy......"

The note and agreement were signed and sealed by the policyholder and by the beneficiary. The annual reports made by the company to the State Insurance Department, and also to the policyholders, designate these transactions as loans to policyholders and as assets of the plaintiff. About one-third of the loans are repaid in cash to the company and the balance are deducted from the policies at the termination thereof. There are no agreements between the company and its policyholders, as to the loans, other than that evidenced by the writings above quoted. The company made the loans entirely upon the security afforded by the policies and uniformly less than the cash surrender value thereof, and, in case of default, realized upon the loans by terminating the policies, as provided in the agreement, and never by personal action upon the notes. In fact, the company's officers considered the matter as if there was no personal liability and would so state upon inquiry; but it is not shown that such statement was made to any of those to whom loans were granted. An inference might be drawn from plaintiff's method of bookkeeping that it considered the loans as advancements, although that does not clearly appear. Among the facts found by the chancellor were: (a) "Nor does it appear in evidence that the borrower had any knowledge of plaintiff's system of keep-

ing accounts or had in any way acquiesced therein." (b) "While in practice the plaintiff, where the borrower did not pay off the loan, always collected it by the certain and easy method of deduction upon cancellation, surrender or maturity of the policy, there was no evidence of any waiver of any other rights or remedies for collection which plaintiff might have under the demand promissory notes and accompanying collateral security agreement." (c) "When plaintiff made a loan to a policyholder on these demand notes it carried on its books the policy at its full reserve liability without any deduction by reason of the loan." (d) "When a policyholder borrows from the plaintiff upon the security of his policy he nevertheless received his full share of mutual dividends thereafter without any deduction or diminution by reason of the loan." (e) "When plaintiff makes a loan to a policyholder on the security of his policy it does not strike or complete any balance of account nor is the policy carried as a reserve liability based on its original reserve less the loan." (f) "When the loan is paid off, the policy reserve liability of the company is just the same as though the loan had not been paid." (g) "None of the notes or accompanying collateral security agreements contained any provision that the loan was made on the sole security of the policy." But, largely from the company's method of bookkeeping and from the facts that it had never attempted to enforce personal liability upon the notes, and its officers were of the opinion there was no such liability and so stated to all parties making inquiry, and that the so-called loans were uniformly less than the cash value of the policies and, when necessary, were repaid by deductions therefrom, the chancellor found as a legal conclusion that the loans upon policies were in reality advancements and created no indebtedness to the company, and were therefore not taxable.

In our opinion such conclusion cannot be sustained. The true nature of the transaction must be determined

by the note and its accompanying agreement, and thereunder the company might, at its option, proceed upon either. That the company's uniform practice was to deduct the loans from the policies, when not paid, would not deprive it of the right to bring suit upon the note; nor is the opinion of its officers, that as matter of law the borrowers incurred no personal liability, important: Economy Building Assn. v. Hungerbuehler, 93 Pa. 258. The holder of a collateral note may at his option sue upon the note without attempting to realize upon the collateral (Harper v. Lukens, 271 Pa. 144), or proceed upon the collateral without taking action upon the note: Lishy v. O'Brien, 4 Watts 141. The agreement as to the collateral authorizes but does not compel the company to collect the loan out of the policy in case of default. "The collateral security stands by the side of the principal promise as an additional or cumulative means for securing payment of debt": 11 Corpus Juris 961. The fact that the pledged policies were continued at their full value and so returned on payment of the loans, and that the borrowers in all cases could, and in one-third of the cases did, repay the loans in cash, supports the theory of loans, rather than of advancements. Of course, if the money was merely paid to the insured as a credit upon his policy, there would be no indebtedness to tax, but that is not this case as we view it. Where a life insurance company loans money to its policyholders, taking notes with the policies as security, it creates a taxable indebtedness: Metropolitan Life Ins. Co. v. New Orleans, 205 U. S. 395. Where, however, a policyholder simply withdraws a portion of the reserve on his policy, and there is no personal liability, it is not a loan or credit upon which the company can be taxed and this is not affected by the fact that the policyholder gives a note on which interest is necessarily charged to adjust the account: Orleans Parish v. N. Y. Life Ins. Co., 216 U. S. 517. But in the case just cited it is provided on the face of the note that if not paid at maturity

it shall be extinguished automatically by a deduction from the reserve value of the policy. In that case and also in Liverpool, etc., Ins. Co. v. Orleans Assessors, 221 U. S. 346, the principle of Metropolitan Life Ins. Co. v. New Orleans, supra, is expressly recognized where the transaction was a loan properly so called. The loans in question, treated as insurance assets of the plaintiff company, are liable to taxation: Provident Life and Trust Co. v. Klemmer et al., 257 Pa. 91; Provident L. & T. Co. v. McCaughn, 245 Pa. 370. As the company has ample security for each loan, there is no question as to the solvency of the debtors.

It is not necessary here to construe clause 8 of section 25 of the Act of June 1, 1911, P. L. 581, 593, providing, under certain conditions, for advancements of money to policyholders upon the sole security of the policies, for none of those here in question contain such a provision as is there required, and few if any of them were issued after that act became effective.

The decree is reversed, the injunction is dissolved and the bill is dismissed at the costs of the plaintiff.