## Commonwealth v. Land Title Bank & Trust Company, Trustee

*Thomas B. Drum*, of *Ballard, Spahr, Andrews & Ingersoll*, for appellant.

*F. Gilman Spencer*, for Commonwealth.

SLOANE, J., May 1, 1941.—This proceeding is an appeal from a personal property tax assessment levied by the State Department of Revenue against defendant as trustee under the will of Michael Ehret, deceased, for the year 1936. Since the same issue is presented in each yearly assessment for 1937, 1938, and 1939, this appeal, by orders of the several courts, has been consolidated with the appeals for the succeeding years, similarly captioned and bearing the following court terms and numbers: C. P. No. 5, June term, 1940, no. 4291 (1937 assessment); C. P. No. 1, June term, 1940, no. 4292 (1938 assessment); C. P. No. 2, June term, 1940, no. 4293 (1939 assessment).

The facts, not being in dispute, have been stipulated by counsel.

Michael Ehret died February 17, 1913, leaving a last will and testament together with a codicil, all of which were duly probated on February 21, 1913, in Philadel-

phia. Under the will and codicil, Harry S. and Alvin M. Ehret were appointed surviving trustees and defendant successor trustee. The provisions of the codicil, pertinent to the present appeals, are as follows:

"Since making my Will, I made an advance of Fifty Thousand Dollars ($50,000) to each of my sons Harry S. and Alvin M. Ehret. Of course this carries with it no interest during my lifetime. Each advance shall begin to bear interest at the rate of four per centum (4%) per annum upon my decease. Until the final division and distribution of the principal of my estate, so long as either of my sons or the descendants of either of my sons shall be receiving income, each of said advances shall be treated as an asset bearing four per centum (4%) interest, and such interest shall be charged against the share of income which shall go at any division and distribution thereof, to the child advanced, or to the descendants of such child so advanced. In case of any distribution to the descendants of the advanced child, of principal, said sum of Fifty Thousand Dollars ($50,000) shall be charged as a payment on account of said share."

Commencing immediately subsequent to testator's death, defendant as trustee has deducted regularly from the share of income distributed to Harry S. and Alvin M. Ehret an amount equal to four percent per year upon the advances mentioned in the above codicil. On January 17, 1940, an assessment was made under the State Personal Property Tax Act of June 22, 1935, P. L. 414, as amended, 72 PS §3244, against defendant as trustee, which included the personal property advanced under the codicil in the sum of $100,000. The Department of Revenue rejected defendant's petition for reassessment on the ground that the property assessed constituted an "account bearing interest" under the taxing statute. This appeal followed, defendant contending herein that the property assessed was not taxable under the act. It is agreed that the property assessed is taxable as an "account bearing interest" or not at all.

Defendant's contention is that the property assessed constitutes an advancement by decedent and as such is not taxable as an "account bearing interest" in the hands of his estate. We think defendant's position is sound.

" 'Advancement,' as a law term, signifies 'a pure and irrevocable gift, by a parent, in his lifetime to his child, on account of such child's share of the estate, after the parent's decease': Miller's App., 31 Pa. 337; Long's Est., 254 Pa. 370, 375": Harrison's Estate, 298 Pa. 514, 516 (1930).

In the present case, testator, before his death, made an "advance" to each of two sons, the amount of which is to be charged as a "payment" on account of the respective shares of their descendants in his estate upon final distribution. After testator's death, while the sons are receiving income from the estate, before final distribution, the "advance" is to be treated as an "asset" bearing four percent interest, which is to be deducted from the income payable to each son. There is no evidence of an obligation on the part of the sons or of their descendants to repay the "advances" if the estate should become insolvent or if their respective shares therein should be less than the amount of the "payments" on account.

Under such circumstances, we think it clear that testator intended the "payments" to his sons as advancements. There is no indication that he considered the money merely loaned or expected repayment. On the contrary, the codicil clearly characterizes the transaction as an "advance" "payment on account" of the sons' and their descendants' respective shares in the estate.

"While one meaning of the word 'advance' is payment before maturity, yet in a broader sense it may include gifts, loans, or advancements. 'While the word in its strictly etymological significance indicates money paid before or in advance of the proper time of payment, and does not therefore imply a loan, it has been so frequently used as its equivalent that it may be said that the word, whether taken according to its meaning in law or accord-

ing to its meaning in common usage, includes loans as well as gifts': 2 C. J. 32. This is quoted with approval in Mosser Co. v. Cherry River Boom & Lumber Co., 290 Pa. 67, 70. 2 C. J. 32 also says that in its strict legal sense the word 'advances' does not include 'advancements', yet in the instant case, it manifestly does. The same volume at page 33 refers to the word 'advances' as used in contracts as follows: 'While the use of the word in contracts has been in many instances construed, the word has no such certain meaning that the court can determine the sense in which the term is used by the parties without examining the contract as an entirety and seeking the aid of the surrounding circumstances and the practical construction of the contract by the parties themselves' . . . It is also true that the words 'advances' and 'advancements' are sometimes used interchangeably": Harrison's Estate, supra, p. 516.

The fact that testator has specified that the "advances" shall be deducted from the shares bequeathed to the sons' descendants rather than from any share given to the sons does not affect our conclusion. Although the will itself is not before us, it is safe to assume that testator has not directed final distribution until the death of his children, and that he expected the advances to his sons to be passed on to their descendants. Consequently, it was unnecessary to direct a deduction from sons' shares in the estate and logical, to assure equality of distribution among all his kin, only to require the deduction of the amount of the advances from the shares bequeathed to the sons' descendants. By taking this broader view of the problem, he has insured equal distribution among all his possible descendants instead of merely among his children. The interest requirement meanwhile takes care of any inequalities which may arise in the distribution of income among his children. This view of testator's intent is entirely in accord with our conclusion that the payments constituted advancements and not loans.

With respect to the question of interest on advancements, "Two or three perfectly well established rules prevail in regard to the general subject. One is that advancements do not of themselves bear interest. Another is that if interest is to be charged on an advancement, it can only be done by force of an intent of the testator to that effect, and that intent must be clearly expressed in the will: Miller's Appeal, 31 Pa. 337; Porter's Appeal, 94 Pa. 332": Farnum's Estate, 176 Pa. 366, 367 (1896). It is therefore clear that a provision in a will for interest on an amount paid before death, as in the present case, will not destroy its status as an advancement as long as the essential features of the transaction indicate that an advancement was intended.

It is of course recognized that the use of the term "asset" in the codicil is inconsistent with the theory of advancements. However, testator's intent must be determined from an examination of the entire will, which we concluded above shows an advancement, and not from an isolated phrase. Furthermore, the language of the will indicates that the advances shall be only "treated" as "assets" obviously to insure the payment of interest and equality of distribution as to the principal of the estate. See Kratz's Estate, 72 Pa. Superior Ct. 232, 235 (1919).

Having concluded that the payments herein are advancements, we think it follows that they are not taxable as an "account bearing interest" belonging to the trustee. Advancements are essentially gifts, as the leading case on this subject emphatically points out: Miller's Appeal, 31 Pa. 337 (1858). The only difference between them lies in the fact that an advancement is made by a decedent before death and must be deducted from the payee's share in decedent's estate. Nevertheless, an advancement carries with it absolute title and the amount thereof need not be repaid if the estate is insufficient to cover all legacies: Kratz's Estate, supra. In the case just cited, it was held that an advancement shall not be considered as part of decedent's estate with respect to inheritance taxes.

On the other hand, "The term 'account', in its broadest sense, means an unsettled claim or demand based upon a transaction creating a debtor and creditor relation between the parties thereto, usually but not necessarily represented by an ex parte record kept by one or both of the parties, but not evidenced by any written obligation. The term is also sometimes used, in a narrower sense, to indicate the written record or statement of the account. An account is a chose in action": 1 Am. Jur. 265. See also 1 C. J. S. 571.

Such definition is opposed to the Commonwealth's contention that an account does not necessarily imply the existence of an indebtedness.

"The word 'account' is flexible in meaning, depending somewhat on the surrounding circumstances and the connection in which it is used. The term usually involves some matter of debt and credit, or demands in the nature of debt and credit between parties": Harnischfeger Sales Corp. v. Pickering Lumber Co., 97 F.(2d) 692, 694 (C. C. A. 8th, 1938) (interpreting use of the term in a contract).

On that basis, the cases relied upon by the Commonwealth are distinguishable. In Arbuckle's Estate, 324 Pa. 501 (1936), the tax was sustained upon the beneficiaries of a decedent's estate with respect to his interest in a partnership, which was held under the circumstances to be an "account bearing interest". Under the partnership agreement, the amount due decedent was to remain as a deposit with the surviving partners for a period of two years drawing interest at 4½ percent per year and at the end of this period was to be paid off at the rate of 25 percent every three months. In that case, it is clear there was a definite obligation on the part of the surviving partners to pay to the estate an amount equal to the deceased partner's interest. In Commonwealth v. Beisel, 338 Pa. 519 (1940), the tax was sustained upon the beneficiary of a life insurance policy when the deceased insured had directed that the proceeds of the policy re-

main with the insurer after his death to be paid in monthly instalments plus interest. This was held to be an "account bearing interest" in the hands of the beneficiary. But again it is clear that there was a direct obligation on the part of the insurer to pay the beneficiary a certain sum periodically. In the present case, as we have pointed out above, there was no legal obligation to return any part of the money advanced. The fact that the amount thereof was to be deducted from the shares of the estate bequeathed to the sons' descendants was intended merely to assure equality of distribution. Such fact does not in any way lessen the sons' title to the money already received. As to that, they are the complete owners. The estate can assert no rights against it or against the sons, except the right to deduct annually from the income of the estate payable to the sons as interest an amount equal to four percent of the fund. The estate having no interest in the fund and the sons having no obligation to repay any part of it, it cannot be considered taxable as personal property in the hands of the trustee, much less as an "account bearing interest".

A particularly analogous case is Board of Assessors of Parish of Orleans et al. v. New York Life Insurance Co., 216 U. S. 517 (1910). There the tax was levied upon "credits". Defendant insurer transferred on request certain sums to its policyholders, which it called "loans" of the reserve fund of the respective policies. The policyholders gave notes on which interest was charged but did not obligate themselves personally therein for repayment. If the amount received was not repaid at maturity, it was deducted automatically from the reserve fund which policyholders were ultimately entitled to receive under the policy. In holding such sums transferred not taxable as "credits" owned by the insurer, the court said in an opinion by Justice Holmes:

"The so-called liability of the policy-holder never exists as a personal liability, it never is a debt, but is merely a deduction in account from the sum that the plaintiffs

ultimately must pay. . . . In form it subsists as an item until the settlement, because interest must be charged on it. In substance it is extinct from the beginning, because, as was said by the judge below, it is a payment, not a loan."

The essential holding of that case was recognized by our Supreme Court in Provident Life & Trust Co. v. Gratz et al., 271 Pa. 133 (1921), where with similar circumstances the court held the "loans" taxable as "All moneys owing by solvent debtors" because the policyholders incurred personal liability in the transaction. The holding in the Parish of Orleans case was approved but distinguished, the court saying (p. 139) :

"Of course, if the money was merely paid to the insured as a credit upon his policy, there would be no indebtedness to tax, but that is not this case as we view it".

As we have already indicated by the previous discussion, we think that the present situation is more closely akin to that before the court in the Parish of Orleans case.

The appeals are sustained and the assessments set aside.